UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL BOYD, Individually and as | § | |
| heir of CHRISTINE SEXTON, deceased, | § | |
| and TROY FARMER, as next friend of | § | |
| SARAH "RASPBERRY" SEXTON | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION _____ |
| | § | |
| CITY OF RIVER OAKS, TEXAS, | § | |
| and LEGACY LONG DISTANCE | § | |
| INTERNATIONAL, INC. d/b/a | § | |
| LEGACY INMATE COMMUNICATIONS | § | |
| | § | |
| Defendants. | § | |

PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW, Michael BOYD ("BOYD"), Individually and as heir of Christine Sexton ("Decedent") and Troy Farmer as next friend of Sarah "Raspberry" Sexton ("Raspberry") and makes and files this, Plaintiffs' Original Complaint against the City of River Oaks, Texas ("City") and Legacy Long Distance International, Inc., d/b/a Legacy Inmate Communications ("Legacy"), and would show the court as follows:

Jurisdiction and Venue

1.      This action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §§ 101.001, et seq., Chapter 74 of the Texas Civil Practice and Remedies Code and the common law of the State of Texas.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper in the Court because the events giving rise to these claims all occurred in the Northern District of Texas and at least one of the defendants reside in the Northern District of Texas, pursuant to 28 U.S.C. § 1391(b).

<u>Parties and Involved Individuals</u>

3.      MICHAEL BOYD is an individual residing in the Northern District of Texas at 8225 Old Springtown Road, Springtown Texas.

4.      TROY FARMER is an individual residing in the Northern District of Texas at 4744 Lowell Lane, Fort Worth, Texas.

5.      CITY OF RIVER OAKS, TEXAS is a Texas municipality corporation, and may be served with process herein through Mayor Herman Earwood at 4900 River Oaks Boulevard, River Oaks, Texas.

6.      LEGACY LONG DISTANCE INTERNATIONAL, INC. d/b/a LEGACY INMATE COMMUNICATIONS is a Texas corporation and may be served through their registered agent at 1614 Sidney Baker Street, Kerrville, Texas.

<u>Conditions Precedent</u>

7.      Plaintiffs specifically aver that all conditions precedent to this suit have occurred, or have been waived.

<u>Statement of Facts</u>

8.      This case arises out of the death of Christine Sexton, while she was being held in the custody of the River Oaks municipal jail.  Christine's father is Michael BOYD, and she had two

children, Thomas Sexton (who is of the age of majority) and Sarah "Raspberry" Sexton who is represented herein by her father, Troy Farmer as next friend.

9.      On February 2, 2013, Christine Sexton dialed 911 requesting assistance at her residence located at 5313 Pomona Ave., River Oaks, Texas.   Christine Sexton communicated that she needed assistance with an assault by Richard Briere ("Briere") upon her person which was at that time in progress.   Briere was Christine Sexton's abusive live-in boyfriend, and the River Oaks Police Department were well aware that Briere was often abusive towards Christine Sexton, both because they had responded to the Pomona address for prior incidents and because Officer Edward Sherif was an intimate friend of Briere and was aware of prior assaults by Briere on Christine Sexton requiring hospitalization.

10.     River Oaks Police Department responded to Christine Sexton's distress call but instead of protecting her, she was arrested for outstanding warrants for minor violations.

11.     Christine Sexton remained in the River Oaks jail, where she was visited on February 5, 2013 by her sister Darla Crites.   As Crites was entering the facility for visitation, she noticed Briere also in the visitation waiting room.   Crites was taken back to the cell where Christine Sexton was being held by River Oaks Officer Sherif, to overhear and take part in the conversation.   During this conversation, Christine Sexton told Crites that she was scared and wanted to hang herself but could not figure out how to do it.   During this visitation, Crites noticed that Christine Sexton continued to wear the clothing Crites had brought her on February 2, and had not showered.   Christine Sexton loudly and repeatedly voiced an intention to hang herself, and begged and pleaded for Crites to do anything to get her out of jail.   Officer Sherif terminated the interview after only a few minutes, although Crites continued to attempt to speak

with Christine Sexton.

12.     After the interview, Crites telephoned the dispatcher at the River Oaks jail, and informed the dispatcher that Christine Sexton was making repeated threats to commit suicide.  Crites informed the River Oaks dispatcher that she believed Christine Sexton was a danger to herself, and communicated an intent (known in Street slang as "having someone Baker Act-ed" after a Florida law that allows mentally ill people to be committed to a mental health facility for 72 hours against their will) to have Christine Sexton placed in a mental health facility after her bond was posted.  Specifically, Crites asked the dispatcher for any kind of recording of the visitation wherein Christine Sexton was voicing suicidal ideation.  The dispatcher told Crites that someone would return her call. At approximately 8 PM Ed Sherif telephones Crites and said there were no recordings of the visitation.  During that conversation Crites asked Sherif if he would recount what he overheard in terms of suicidal plans by Christine Sexton, and Sherif refused.

13.     Christine Sexton was scheduled to be transferred to the Tarrant County jail on the following day, February 6, 2013.  The family had already contacted a bail bondsman to have Christine Sexton's bail posted at that time.  Crites continued throughout the day to call the River Oaks dispatcher to determine whether Christine Sexton had been transferred to Tarrant County. At 8:56 PM, Darla Crites was told that Christine Sexton had been transferred.

14.     Unfortunately, the information given to Crites was proven to be false.  Instead, Christine Sexton had taken her own life and was found by Officer Sherif at approximately 6 PM dead. Christine Sexton tied a white tube sock around her neck and tied the sock around a telephone cord provided to her in her cell.  Sexton put her hand on the toilet seat and bent her knees so that the leverage provided the necessary pressure on the neck to asphyxiate her.  According to the

Tarrant County medical examiner's report, the River Oaks Police Department cannot determine how Christine Sexton obtained the tube sock but that they were not her own.

15.    Tragically, despite repeated vocalization of suicidal ideation, River Oaks Jail personnel never placed Christine Sexton on a suicide watch or increased her supervision in any way.  On February 6, 2013 Christine Sexton was offered lunch around noon and that lunch was taken away at 12:30 PM without having been eaten.  No officer in the River Oaks Police Department or in the River Oaks jail checked on Christine Sexton until she was found dead in her cell later that evening.  Cameras located in the jail facility do not, upon information and belief, show the area where the telephone cord is located.  Suicide by telephone cord is a common mechanism for jail suicide and is foreseeable to the Defendants herein.

16.    The telephone in question was owned and operated by defendant Legacy Inmate Communications as part of a joint venture with defendant River Oaks.

Count One:<br>
Claims Against City of River Oaks Under the Texas Tort Claims Act

17.    Plaintiffs adopt and republish paragraphs 1 - 16 as if set forth at length.

18.    As set forth above, Decedent Christine Sexton was suicidal when she was taken into custody and held by the City of River Oaks, and City of River Oaks was well aware of this fact. Despite this, Decedent was never placed on suicide watch and was instead placed in a cell containing a telephone cord suitable for use in hanging herself.

19.    These facts give rise to a claim against City of River Oaks under Section 101.021(2) of the Texas Tort Claims Act.  Specifically, City of River Oaks can be liable in negligence for Decedent's death where it was caused by the use of tangible personal property, and in this case

Sexton was strangled by a tube sock belonging to City of River Oaks as a direct and proximate result of the City's negligence. Further, City of River Oaks was negligent in the installation of certain items of tangible personal property, including the telephone itself, the camera and surveillance equipment, the design of the jail (so that inmates could not be seen at all times, particularly when using the telephone).

20.     The incident described above and the resulting damages suffered by the Plaintiffs were proximately caused by the negligent conduct of City of River Oaks's agents, servants or employees in one or more of the following respects: (1) allowing Decedent to be placed in a cell containing a phone cord she could use despite knowing she was suicidal and despite not keeping him under a suicide watch; (2) allowing Decedent to be in possession of instruments that allowed her to remove the phone cord from its place and use it for the purpose of hanging herself.

21.     Each of these acts and omissions, singularly and in combination, constitutes negligence that proximately caused the injuries complained of herein. This negligence supports a cause of action for wrongful death by Boyd and Sarah Sexton, and a survival action brought on Decedent's behalf by the administrator of the Estate.

Count Two:
<u>Claims Against City of River Oaks Under 42 U.S.C. § 1983</u>

22.     Plaintiffs adopt and republish paragraphs 1 - 21 as if set forth at length.

23.     As set forth above, Decedent was suicidal when he was taken into custody and held by City of River Oaks, and City of River Oaks was well aware of this fact. Despite this, Decedent was never placed on suicide watch and placed in a cell containing a telephone cord suitable for use in hanging herself. All of these acts and omissions were done under color of law.

24.     These facts give rise to a claim against the City of River Oaks under 42 U.S.C. § 1983. Specifically, as a pre-trial detainee, Decedent had the right to be free from deliberate indifference towards her serious psychological needs by jail personnel while in custody.  Such rights are substantive rights to live guaranteed by the Fourteenth Amendment of the United States Constitution, and the right to bodily integrity guaranteed by the Fourth Amendment of the United States Constitution.

25.     City of River Oaks, through its agents, servants or employees, at all times acted with deliberate indifference to Decedent's constitutional rights and under color of law.  Specifically, City of River Oaks, through its agents, servants or employees acted both negligently and with deliberate indifference to Decedent's serious psychological needs by failing to keep her under suicide watch while she was incarcerated and in failing to keep her in an environment where Decedent would be unable to do herself injury even in spite of all of these other failures.

26.     For purposes of this action, the Plaintiffs will show that City of River Oaks, its agents, servants or employees, were responsible for the development and the implementation of policies and procedures governing the care, treatment and monitoring of prisoners held in its jail generally, and particularly for the care and treatment of prisoners who (like Decedent) are suicidal when they are arrested, and that it has the decision-making authority with respect to which policies and procedures are implemented and used to discharge these duties.

27.     Plaintiffs will further show that while certain policies and procedures had been implemented and put into place to govern the treatment of suicidal prisoners, these policies and procedures were either not followed in this case or they were inadequate or both.  As a result, Decedent not only did not receive the care that she needed to treat her condition, she was

affirmatively placed in a position where her untreated condition gave rise to the risk of suicide, a risk that unfortunately came to pass.  As the result of these failures, Decedent died.

Count Three:
<u>Health Care Liability Claim Against</u>
<u>City of River Oaks</u>

28.     Plaintiffs adopt and republish paragraphs 1 - 27 as if set forth at length.

29.     Plaintiff also asserts health care liability claims against City of River Oaks, pursuant to the provisions of Chapter 74 of the Texas Civil Practice and Remedies Code.

30.     With respect to the claims against City of River Oaks, the Plaintiffs allege that City of River Oaks's employees and/or agents were negligent in failing to either admit Decedent for inpatient care when she was suicidal and/or for failing to prescribe some drug or other treatment which would ameliorate her suicidal condition.   These failures, either singularly or in conjunction with others, was the direct and proximate cause of her death.

31.     With respect to the claims against City of River Oaks, it negligently diagnosed, treated and supervised Decedent during her incarceration and/or failed to write, follow, and/or administer the proper protocols for a suicidal inmate.  These failures, either singularly or in conjunction with others, was the direct and proximate cause of her death.

Count Four:
<u>Claims against Legacy</u>

32.     <u>Negligence</u>: Legacy failed to use ordinary care, *i.e.*, they failed to do that which a reasonably prudent telecommunications company would do under the same or similar circumstances, in that they:

     a)   failed to provide state of the art hardware, i.e. a cord-free phone; and

b) failed to repair, modify, remove, make safe the corded telephone with a cord-free telephone, that was appropriate or reasonably safe for unattended jail cell use by inmates such as Decedent.

c)  failed to replace a corded phone, which they knew to be a risk for use in inmate suicides.

33.     <u>Negligence – Joint Enterprise</u>: The Defendants, City of River Oaks and Legacy, entered into a joint enterprise in which their common purpose was to provide various telephone services to the county jail inmate clientele.   The service included, but was not limited to, providing corded telephones to the county jail for use by inmates over whom City of River Oaks had custodial charge.   Both Defendants shared the revenue generated from the inmates' collect calls and thus created a community of pecuniary interest in the purpose of the joint enterprise; each Defendant exercised, by agreement and in fact, each exercised an equal right of control in the enterprise, including but not limited to number, location, movement, removal, maintenance, type of equipment.   The Defendants, Legacy, as a member of the joint enterprise with City of River Oaks individually and vicariously on behalf of City of River Oaks, owed a common law legal duty to Plaintiff, including decedent, to protect decedent from harm.   The Defendant, Legacy, breached that duty and that breach proximately caused the death of the decedent and plaintiff's injuries.

34.     <u>Product Liability:</u>

Implied Warranty:

a)       Legacy had actual knowledge and alternatively had reason to know the particular corded telephone at issue was inherently dangerous despite being in use in the cell

occupied by decedent.

        b)     Legacy had actual knowledge that City of River Oaks relied on the skill and judgment of Legacy to select and furnish corded telephones for inmate use in cells such as occupied by decedent at the time of her death.

        c)     Legacy had actual knowledge that the corded telephone at issue was unfit for its intended purpose due to the known risk of suicide by inmates using such phones in Texas County jails.

35.    <u>Express Warranties</u>:

        a)     Legacy represented to City of River Oaks and inmates such as Decedent that the corded telephone at issue and accompanying corded handset was safe for use, when they possessed actual knowledge prior to the date of the Decedent's death that the opposite was true.

36.    <u>Strict Liability</u>:

        a)     Legacy marketed, and installed an unreasonably dangerous product, that being the corded telephone, which was capable of being used by inmates to commit suicide when there was a safer alternative design that was available for use at little or no additional costs.

37.    <u>Misrepresentation</u>:

        a)     Legacy represented to City of River Oaks that the corded telephone at issue was safe for inmate use;

        b)     Legacy represented to City of River Oaks that the telephone in question possessed components that were safe for unattended inmate use inside jail cells;

        c)     City of River Oaks relied on Legacy' representations in allowing Legacy to install and maintain such equipment in the jail cell occupied by Decedent.

## Damages

38.    Plaintiffs adopt and republish paragraphs 1 - 37 as if set forth at length.

39.    On behalf of Decedent, Plaintiffs seek recovery under the Texas survival statutes for the physical pain and suffering and mental anguish Decedent suffered as the direct and proximate result of her hanging, and of the knowledge that she had of her impending death as she hung in her cell and any and all damages to which she might be entitled attributable to the violations of her constitutional rights detailed above.  Plaintiffs also seek recovery for any and all costs or expenses associated with Decedent's death for which recovery may be had, such as burial expenses.

40.    As statutory wrongful death beneficiary, Plaintiffs seek recovery for the damages that they have suffered as the result of Decedent's death under the Texas wrongful death statutes. The Plaintiffs seek to recover for the past and future mental anguish that they will suffer and which was the direct and proximate result of Decedent's death, to the loss of the love, comfort, companionship and solace that their relationships with Decedent provided and would provide to them in the future, for the loss of income attributable to Decedent's untimely death and for any and all damages to which they might be entitled attributable to the violations of her constitutional rights detailed above.

41.    Plaintiffs seek to recover all these damages in an amount to be determined by the trier of fact.

## Attorney's Fees

42.    Plaintiffs adopt and republish paragraphs 1 - 41 as if set forth at length.

43.    Plaintiffs hereby seek an award of attorney's fees pursuant to 42 U.S.C. § 1988.

44.     Plaintiffs will show that they have had to retain the undersigned attorney to prosecute this action on their behalf, and, upon final trial of this cause, that they should be awarded their reasonable attorney's fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Court enters judgment against the Defendants, jointly and severally, as follows:

For damages suffered by Decedent before her death for physical injury, pain and suffering and mental anguish, damages arising after his death, including but not limited to the cost of burial and violations of his constitutional rights, as found by the trier of fact but in the amount of at least $10,000,000.00;

For damages suffered by Plaintiffs for the past and future mental anguish they will suffer as the result of Decedent's death, for the loss of the love, comfort, companionship and solace her relationship with Decedents would have provided, for the loss of income attributable to Decedent's untimely death and for any and all damages to which they might be entitled attributable to the violations of his constitutional rights, as found by the trier of fact but in the amount of at least $10,000,000.00.

An award of reasonable and necessary attorney's fees and costs; and

For such other and further relief, general or special, in law or in equity, to which they may prove themselves to be justly entitled.

Respectfully submitted,

___/s/ Jay English_____

**JAY C. ENGLISH**
State Bar No. 06625290
**ENGLISH & ASSOCIATES, P.C.**
1700 Pacific Avenue, Ste 3680
Dallas, TX 75222
(214) 528-4300 - Telephone
(972) 733-1335 – Facsimile
jenglish@englishpllc.com
**ATTORNEY FOR PLAINTIFFS**