IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
        FILED

     JAN 1 6 2014

CLERK, U.S. DISTRICT COURT
By _____
           Deputy
```

| | | |
|---|---|---|
| MICHAEL BOYD, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | No. 4:13-CV-443-A |
| | § | (Consolidated with |
| CITY OF RIVER OAKS, TEXAS, | § | No. 4:13-CV-511-A) |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, one filed by defendants City of River Oaks, Texas ("City") and Police Chief Alvin Carter ("Carter")[1] (collectively, "City Defendants"), and one by defendant Legacy Long Distance International, Inc. d/b/a Legacy Inmate Communications ("Legacy"). Defendants J.C.W. Electronics, Inc., J.C.W. Electronics I, L.P., and J.C.W. Electronics I Ltd., L.L.P. d/b/a J.C.W. Inmate Payphone Systems (collectively, "J.C.W. Defendants"), are not parties to the motions to dismiss. Plaintiffs[2] filed a response to each motion,

---

[1] The consolidated amended complaint identifies the police chief as "Alvin Carter," while the motion to dismiss names him as "Avin Carter." The court will refer to this defendant as he is named in the consolidated amended complaint.

[2] Plaintiffs are Michael Boyd, individually and as heir of Christine Sexton, deceased; Sarah-Raspberry Epiphany Farmer, by and through her next friend, Troy Farmer; Thomas Sexton, individually and as heir

(continued...)

and City Defendants filed a reply.  Having considered all of the parties' filings, the Consolidated Amended Complaint that is the subject of the motions, and the applicable legal authorities, the court concludes that City Defendants' motion should be granted in part and denied in part, and that Legacy's motion should be granted.

I.

Background

Two groups of plaintiffs initiated separate actions against the various defendants.  The parties moved to consolidate the cases, which the court granted on July 17, 2013, and ordered the parties to file a consolidated amended complaint that combined all claims and causes of action by all plaintiffs against all defendants.  Plaintiffs then filed their Consolidated Amended Complaint, which makes the following factual allegations:

Christine Sexton ("Christine") was the mother of plaintiffs Thomas Sexton and Sarah-Raspberry Epiphany Farmer; Sarah-Raspberry's father is Troy Farmer.  Christine's father is plaintiff Michael Boyd, and her mother is plaintiff Judy Ernst.

On February 2, 2013, Christine dialed 911 requesting assistance at her residence due to an assault by her live-in

---

(...continued)
of Christine Sexton; Judy Ernst, individually and as heir of Christine Sexton; and the Estate of Christine Sexton, by and through Thomas Sexton.

boyfriend, Richard Briere ("Briere").  City police officers had
previously responded to other incidents at Christine's residence
concerning Briere.  Officer Edward Sherif ("Sherif") was a
personal friend of Briers's and was aware that Christine had
previously been hospitalized after being assaulted by Briere.

Upon responding to the emergency call on February 2, 2013,
the officers arrested Christine on outstanding warrants for minor
violations.  A few days later, on February 5, 2013, at
approximately 6:00 p.m., Christine's sister, Darla Crites
("Crites"), visited Christine at City's jail and stayed until
approximately 7:00 p.m.  Briere was also at the jail, and Crites
assumed he had been visiting Christine.  Visitors were not
searched in any way prior to seeing prisoners, and the cells
holding detainees contained a slot that was open for serving food
and for communication between prisoners and visitors, thus posing
a risk to prisoners from visitors.

Crites was taken to Christine's cell, where Sherif "was
present to overhear and take part in the conversation."  Consol.
Am. Compl. at 5.  During the conversation, Crites noticed that
Christine was extremely emotionally distraught, and she told
Crites that she wanted to commit suicide by hanging herself but
could not figure out how to do it.  Crites saw that Christine was
still wearing the same clothes Crites had brought her on February

2, and had not showered since arriving at the jail.  Christine "loudly and repeatedly voiced an intention to hang herself, and begged and pleaded for Crites to do anything to get her out of jail."  Id.  Sherif was present and overheard this conversation, and terminated the visit after just a few minutes despite Crites's attempts to continuing speaking with her sister.  Although Sherif overheard Christine's threats, he failed to take them seriously.

Immediately after seeing Christine, Crites contacted City's jail dispatcher at 7:20 p.m. and told the dispatcher about Christine's suicidal threats, including her belief that Christine was a danger to herself.  Crites expressed her intent to have Christine placed in a mental health facility after Christine posted bond.  Crites also asked the dispatcher for any recordings of her visit with Christine where Christine voiced her suicidal ideation.  The dispatcher indicated that someone would have to return her call, which Sherif did at 7:42 p.m.  Sherif told Crites no recordings existed of her visit with Christine.  Sherif also refused to confirm that he had overheard Christine threaten to harm herself and "stated that no further action would be taken to protect the life and safety of Christine," even though jail staff were aware of her suicide threat.  Id. at 6.  No jail personnel conducted routine, periodic checks on Christine "as

required by customary jail standards for pre-trial detainees who are potentially suicidal." Id.

Christine was scheduled to be transferred to Tarrant County Jail on February 6, 2013, and her family had arranged to post bail.  Throughout the day of February 6, Crites continued to call City's dispatcher to determine if Christine had been transferred to Tarrant County.  At 8:56 p.m., Crites was told that Christine had been transferred.

This information was false.  Instead, Christine committed suicide and was found by Sherif at approximately 6:00 p.m. on February 6, 2013.  That day, Christine was offered lunch around 12:00 noon, but the food was removed untouched at around 12:30 p.m.  The camera inside Christine's cell depicted the following sequence of events following removal of her lunch tray:  at 1:13:06 p.m., Christine picked up a large white tube sock from under the bed; the sock was not Christine's and it is unknown how it came to be in her cell.  At 1:23:39, Christine again picked up the sock.  At 1:23:40 Christine "tie[d] the sock around her neck for measurement directly in front of the camera." Id.  At 1:23:49 Christine nodded in front of the camera, apparently realizing the sock would fit around her neck.  At 1:24:54, Christine put the sock down on the bed.  At 1:25:56, Christine again picked up the sock.  At 1:26:10 Christine sat down directly

5

under, but out of view of, the camera.  This was the location
where her body was discovered several hours later, at 5:53 p.m.
No one appeared in the video to check on Christine until 5:53:21.

Christine tied the white tube sock around her neck, tied the
sock around a telephone cord provided in the cell, put her hand
on the toilet seat, and bent her knees "so that the leverage
provided the necessary pressure on the neck to asphyxiate her."
Id. at 7.  Although City knew Christine was deceased at 5:53
p.m., City personnel told Crites at 8:56 p.m. that Christine had
been transferred to Tarrant County Jail.

City's jail policy manual has a section dedicated to suicide
prevention.  However, City took no action to protect Christine,
despite knowledge of her suicidal behavior and ideation.  City
jail personnel never placed Christine on suicide watch, did not
supervise her in any way while she was in custody, and failed to
check on her from 12:30 p.m. until she was found deceased at 5:53
p.m.  The camera in Christine's cell also did not show the area
where the telephone was located.  The telephone in Christine's
cell was owned and operated by J.C.W. Defendants as part of a
joint venture with City.

Plaintiffs asserted claims against City under the Texas Tort
Claims Act, 42 U.S.C. § 1983, and a healthcare liability claim
pursuant to Chapter 74 of the Texas Civil Practice & Remedies

Code.[3]  Against Legacy and J.C.W. Defendants plaintiffs asserted claims of negligence, breach of implied warranty, breach of express warranties, strict liability, and misrepresentation.

II.

Grounds of Defendants' Motions

A.   City Defendants' Motion

City Defendants move for dismissal on the following grounds: plaintiffs failed to adequately plead a cause of action for deprivation of Christine's Fourteenth Amendment rights; plaintiffs' state law claims are barred by sovereign immunity,[4] which has not been waived, nor do these claims involve the tangible use of property or a premises defect within the scope of the statutory waiver of immunity; plaintiffs' claims do not constitute a health care liability claim; plaintiffs' request for exemplary damages on their federal law claim is barred by sovereign immunity and the Eleventh Amendment to the Constitution, and the request for exemplary damages as to their

---

[3]Although he is named as a defendant, no claims or causes of action appear to be asserted against Carter.  The first three claims of the Consolidated Amended Complaint are expressly alleged against City, while the remainder are against Legacy and the J.C.W. Defendants.

[4]"Sovereign immunity refers to the State's immunity from suit and liability."  Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003).  Governmental immunity affords the same protection to political subdivisions of the State, including cities, and is the more appropriate term here. Id.  Both parties use the term "sovereign immunity" in their briefs, and the court will do likewise, as the outcome is the same.

state law claims is barred by sovereign immunity; and all claims

against Carter are asserted against him in his official capacity

and are redundant of claims against City.

B.   Legacy's Motion

The essence of Legacy's motion is that plaintiffs have

failed to allege any factual allegations to support any of the

causes of action against it.   Instead, Legacy contends that all

of the causes of action against it assert legal conclusions, as

opposed to facts.

### III.

### Applicable Legal Principles

Rule 8(a)(2) of the Federal Rules of Civil Procedure

provides, in a general way, the applicable standard of pleading.

It requires that a complaint contain "a short and plain statement

of the claim showing that the pleader is entitled to relief,"

Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair

notice of what the claim is and the grounds upon which it rests."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

quotation marks and ellipsis omitted).   Although a complaint need

not contain detailed factual allegations, the "showing"

contemplated by Rule 8 requires the plaintiff to do more than

simply allege legal conclusions or recite the elements of a cause

of action.   Twombly, 550 U.S. at 555 & n.3.   Thus, while a court

must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible.  Id.  To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient.  Id. at 678 (citing Twombly, 550 U.S. at 557).  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.[5]

---

[5]In each of their responses, plaintiffs argued that in deciding a motion to dismiss, the court "must consider the complaint in its entirety, **as well as other sources courts ordinarily examine** when ruling" on such a motion. Pls.' Resp. to Legacy's Mot. to Dismiss at 4 (emphasis in original). The source of this quote is Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007). The "other sources" referred to in Tellabs include "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Id. at 322. To the extent plaintiffs rely on this language to suggest that the court should consider the papers attached to their response to Legacy's motion, the court declines to do so. The papers are unauthenticated and are neither "incorporated into the complaint by reference," nor are the type of which the court may take judicial notice. Although the papers attached to plaintiffs' response to City Defendants' motion are referred to, and relied on, in their Consolidated Amended Complaint, they are also unauthenticated, and the court did not consider them in deciding that motion.

IV.

Application of Law to Facts

A.    Claims Against City

    1.    Tort Claims Act

City, as a governmental entity, is immune from liability
unless a constitutional or statutory provision clearly and
unambiguously waives such immunity.  Wichita Falls State Hosp. v.
Taylor, 106 S.W.3d 692, 696 (Tex. 2003).  Pertinent here, the
Texas Tort Claims Act waives sovereign immunity for "personal
injury and death . . . caused by a condition or use of tangible
personal or real property if the governmental unit would, were it
a private person, be liable to the claimant according to Texas
law."  Tex. Civ. Prac. & Rem. Code § 101.021(2).  Immunity is not
waived, however, when the governmental unit "merely 'allow[s]
someone else to use the property and nothing more.'"  Dallas
Cnty. v. Posey, 290 S.W.3d 869, 871 (Tex. 2009) (per curiam)
(alteration in original) (quoting San Antonio State Hosp. v.
Cowan, 128 S.W.3d 244, 246 (Tex. 2004)).  Rather, section
101.021(2) waives immunity only when the governmental unit itself
uses the property.  Texas A & M Univ. v. Bishop, 156 S.W.3d 580,
583 (Tex. 2005).

Opinions of the Texas Supreme Court interpreting section
101.021(2) demonstrate application of the above principles.  In

10

Cowan, the decedent was committed to a state hospital, where he was allowed to keep his suspenders and walker with him.   128 S.W.3d at 245.   The decedent later used those items to commit suicide, and the decedent's family sued under section 101.021(2). Id.   The Supreme Court held that the hospital did not "use" the personal property, as contemplated by section 101.021(2), merely by allowing the decedent to have it, and so did not waive its sovereign immunity.   Id. at 246.

Similarly, a state university did not "use" a knife in a manner that waived sovereign immunity when faculty advisors allowed a student in a theater production to use a real knife that injured a second student.   Bishop, 156 S.W.3d at 583-84.

The court in Posey faced almost the identical factual situation as the one now before the court.   Posey was arrested for assaulting his mother.   290 S.W.3d at 871.   During intake, the officer left blank a question inquiring into whether Posey was believed to be a medical, mental health, or suicide risk. Id.   Posey was eventually moved into a cell with a corded, although non-working, telephone, and later committed suicide by hanging himself with the telephone cord.   Id.   The court held that the defendant-county "did no more than place Posey in a cell with a corded telephone, which he used to commit suicide."   Id. Consequently, the court found that Posey's suicide "did not arise

11

from the [c]ounty's <u>use</u> of property." <u>Id.</u> (alterations in original).[6]

These cases all point to the same conclusion in this action: the factual allegations in the Consolidated Amended Complaint allege nothing more than that City placed Christine in a cell with a corded telephone, which she used to commit suicide.  No facts are alleged showing any "use" by City of the tube sock, the telephone, the camera and surveillance equipment, or the jail design, sufficient to waive immunity as contemplated by section 101.021(2).  Accordingly, the court finds that City has not waived its immunity, and plaintiffs have failed to state a claim for relief, under the Texas Tort Claims Act.

    2.  <u>Claims Under 42 U.S.C. § 1983</u>

The court concludes that plaintiffs have alleged sufficient factual allegations to survive dismissal of their claims under 42 U.S.C. § 1983, and the motion is denied as to such claims.

    3.  <u>Health Care Liability Claim</u>

Plaintiffs contend that City or its employees/agents failed to admit Christine for inpatient care when she was suicidal, and/or failed to prescribe medication or some form of treatment that would ameliorate her suicidal condition.  Plaintiffs contend

---

[6]Although plaintiffs contend that <u>Dallas Cnty. v. Posey</u>, 290 S.W.3d 869 (Tex. 2009) (per curiam), was incorrectly decided, they have directed the court to no authority supporting that contention, nor to any overturning it.

that City negligently diagnosed, treated, and supervised
Christine while she was incarcerated, and failed to follow proper
protocols for a suicidal prisoner.  According to plaintiffs, all
of these acts and omissions were the "direct and proximate cause"
of Christine's death in violation of Chapter 74 of the Texas
Civil Practice & Remedies Code.  Pls.' Consol. Am. Compl. at 14.

City maintains that dismissal of this claim is warranted
based on the clear language of section 74.003, which states that
"[t]his chapter does not waive sovereign immunity from suit or
from liability."  Tex. Civ. Prac. & Rem. Code § 74.003.
Additionally, City argues that under this chapter, a "health care
liability claim" is "a cause of action against a health care
provider or physician."  Id. at § 74.001(13).  "Health care
provider" is further defined as "any person, partnership,
professional association, corporation, facility, or institution
duly licensed, certified, registered, or chartered by the State
of Texas to provide health care . . . ."  Id. at (12)(A).  City
notes that neither it nor Carter fall within the definition of
"health care provider," so plaintiffs cannot assert claims
against them under Chapter 74.

In response, plaintiffs rely on Chapter 71 of the Texas
Civil Practice & Remedies Code, which is titled "Wrongful Death;
Survival; Injuries Occurring Out of State."  Under section

13

71.001, a "municipal corporation" is included in the definition
of persons against whom a wrongful death action may be brought,
and plaintiffs argue that this definition shows they may maintain
this claim against City. Plaintiffs are mistaken. A claim under
Chapter 71 of the Civil Practice & Remedies Code is distinct
from, and not equivalent to, a claim under Chapter 74. Hence, a
definition in Chapter 71 has no bearing on the clear assertion of
sovereign immunity in Chapter 74, and the Chapter 74 claim is
dismissed.

Plaintiffs' reliance on Chapter 71 is puzzling, as no such
claims are asserted in the Consolidated Amended Complaint. On
page 8 of the Consolidated Amended Complaint is the following
heading:

Notice:

All Causes of Action Asserted as Wrongful Death and
Survivorship Claims[.]

Under this heading, plaintiffs explain that they are all
"wrongful death beneficiaries of Decedent," and that "all causes
of action" seek damages "under the Texas wrongful death
statutes." Consol. Am. Compl. at 8. Page 10 of the Consolidated
Amended Complaint further states that the Estate alleges all
causes of action as "survivorship claims" and seeks recovery
"under the Texas survival statutes." Id. at 10. Following the

14

paragraph containing the "survivorship" language is a heading
identifying "Count One" as claims against City under the Texas
Tort Claims Act.  On page 2, in identifying the sources of their
causes of action, plaintiffs included Chapter 74, but not Chapter
71, of the Texas Civil Practice & Remedies Code.  Nowhere in the
Consolidated Amended Complaint is there a separate count or cause
of action pursuant to Chapter 71.

Wrongful death and survivor claims are separate and distinct
statutory claims, and both are distinct from healthcare liability
claims.  See e.g., Shepherd v. Ledford, 962 S.W.2d 28, 31 (Tex.
1998) (discussing separately the Wrongful Death Act, Survival
Statute, and the predecessor to the Medical Liability statute in
Chapter 74); THI of Tex. at Lubbock I, LLC v. Perea, 329 S.W.3d
548, 568 (Tex. App.--Amarillo 2010, pet. denied) (discussing
differences in the Wrongful Death Act and Survival statute).
Hence, plaintiffs' blanket statement in the Consolidated Amended
Complaint that they assert "all causes of action" as wrongful
death and survivorship claims misapprehends the nature of those
statutory claims.

Nor does it appear that such claims would be viable against
City.  As discussed, any waiver of sovereign immunity must be
clear and unambiguous.  Wichita Falls State Hosp., 106 S.W.3d at,
696.  Other courts to consider the issue have failed to find a

waiver of immunity as to claims under Chapter 71. See e.g.,
Saenz v. City of McAllen, 396 F. App'x 173, *179 (5th Cir. 2010);
City of Tex. City v. Suarez, No. 01-12-00848-CV, 2013 WL 867428,
at *5 (Tex. App.--Houston [1st Dist.] March 7, 2013, pet. filed
Nov. 26, 2013) (mem. op.) (holding no waiver of sovereign
immunity under Wrongful Death Act); Miller v. City of Fort Worth,
893 S.W.2d 27 (Tex. App.--Fort Worth 1994), writ dismissed by
agreement (Oct. 19, 1995), overruled on other grounds, City of
Fort Worth v. Robles, 51 S.W.3d 436 (Tex. App.--Fort Worth 2001,
pet. denied) (rejecting claim of waiver by plaintiffs relying on
language in section 72.001); but see Whipple v. Deltscheff, 731
S.W.2d 700 (Tex. App.--Houston [14th Dist.] 1987, writ ref'd
n.r.e.) (recognizing that county may be liable for wrongful death
under the waiver provisions of the Texas Tort Claims Act). These
authorities argue against reading into the Consolidated Amended
Complaint claims against City pursuant to the Wrongful Death or
Survivorship statutes.

　　4.　Punitive Damages

　　City argues that plaintiffs cannot recover punitive damages
from it for their federal or state law claims. City is correct.
The Supreme Court has expressly held that municipalities are
immune from punitive damages under § 1983. City of Newport v.
Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Although

16

plaintiffs in their response protest that they are not barred from seeking punitive damages under federal law, they cite to no authority supporting that position.  Plaintiffs are barred from recovering punitive damages from City in this action.[7]

5.  Claims Against Carter

City Defendants urge that all claims against Carter should be dismissed because he was named as a defendant in his official capacity only, and such claims are redundant of those asserted against City.  Plaintiffs in their response seem to argue primarily that Carter is not entitled to qualified immunity, and maintain that "a careful reading" of the Consolidated Amended Complaint includes factual allegations against Carter, "who signed and was charged with the deficient jail policies in question."  Pls.' Resp. to City Defs.' Mot. and Supporting Br. to Dismiss Pls.' Consol. Am. Compl. at 20.

As an initial matter, Carter does not assert the defense of qualified immunity, so plaintiffs' argument on that subject is moot.  The court agrees with City Defendants that the claims against Carter in his official capacity--the only capacity in which he is named as a defendant--must be dismissed.

A suit against a government official in his or her official

---

[7]As the court has dismissed plaintiffs' state law claims against City, it need not consider whether plaintiffs could have recovered punitive damages under any of the theories asserted.

capacity represents "only another way of pleading an action against an entity of which an officer is an agent." <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (citation omitted). The Consolidated Amended Complaint identifies Carter as a party "in his official capacity." Consol. Am. Compl. at 2. No indication is given in the remainder of the Consolidated Amended Complaint of an intention to name Carter in his individual capacity. Because plaintiffs are suing Carter only in his official capacity, and are also suing City, the entity of which Carter is an agent, any claims against Carter are really claims against City, and are dismissed.

B.   <u>Claims Against Legacy</u>

The court could discuss in detail each of the claims against Legacy and the specific grounds for dismissal argued in Legacy's motion. However, the court finds that dismissal is warranted as to each of these claims for essentially the same reason:  no facts are alleged in the Consolidated Amended Complaint as would support any such claims.

After being identified on page 3 of the Consolidated Amended Complaint under the heading "Parties and Involved Individuals," Legacy disappears until page 14, where it reappears under the heading "Claims Against J.C.W. and Legacy." Under each of the headings identifying the claims and causes of action against

18

Legacy, plaintiffs have offered nothing more than bare legal conclusions.  Not a single fact is pleaded in the Consolidated Amended Complaint that describes any action or failure to act by Legacy that could support any of the causes of action against it. While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."  Iqbal, 556 U.S. at 679 (citation omitted).  Legal conclusions, however, are all that are directed at Legacy.  The court finds that plaintiffs have failed to allege anything as to Legacy that would raise a right to relief up to, much less above, the speculative level.  See Bell Atl., 550 U.S. at 555.

C.   No Service On J.C.W. Defendants

     The court has determined that there is no record in the file of the above action of service of summons and Consolidated Amended Complaint upon any of the J.C.W. Defendants.  By the date set forth below, plaintiffs must file either proof of proper service of summons and Consolidated Amended Complaint on J.C.W. Defendants, or an instrument containing a satisfactory explanation, in affidavit form, as to why such proof cannot be filed.

D.   Request to Replead

     In the conclusion of their response to Legacy's motion to dismiss, plaintiffs ask that they be permitted to replead.  Rule

19

LR 10.1(a) of the Local Civil Rules of the United States District Court for the Northern District of Texas requires that each motion must "(a) contain on its face a title clearly identifying each included pleading, motion, or other paper; . . . ." The response to Legacy's motion to dismiss does not indicate on its face that it includes a motion or request to replead. Plaintiffs also did not inform the court of the additional facts they could plead to correct the deficiencies in the Consolidated Amended Complaint, and they did not attach to the response a proposed amended Consolidated Amended Complaint.

Additionally, prior to the July 17, 2013 order consolidating the two original actions, City Defendants filed a motion to dismiss, raising the same grounds for dismissal as in the motion now before the court.[8] Although that motion was rendered moot when the parties moved to consolidate the two actions, plaintiffs at that time were on notice of the purported defects in their complaint as to City.

In the July 17, 2013 consolidation order, the court directed plaintiffs to file an amended complaint. In response, the two sets of plaintiffs each filed a separate amended complaint. The court then ordered the parties to file a single, consolidated

_____

[8]Carter was not named as a defendant in the original complaint, so the first motion to dismiss obviously did not address claims against him.

amended complaint.  Plaintiffs have thus had multiple
opportunities to amend their pleadings, and even had the benefit
of City's first motion to dismiss to alert them to potential
problems with their pleadings.  Presumably by this point
plaintiffs have pleaded their best case.  The court can see
nothing to be gained by giving plaintiffs yet another bite at the
apple.  Under these circumstances, the court is not permitting
plaintiffs to replead.  Sullivan v. Leor Energy, LLC, 600 F.3d
542, 551 (5th Cir. 2010).

* * * *

So the record is clear, all that remains of plaintiffs'
claims in this action are plaintiffs' claims against City
pursuant to 42 U.S.C. § 1983, and plaintiffs' claims against
J.C.W. Defendants.

V.

Order

Therefore,

The court ORDERS that:

(1)  City's motion to dismiss be, and is hereby,
granted as to plaintiffs' claims under the Texas Tort Claims
Act and their health care liability claim pursuant to
Chapter 74 of the Texas Civil Practice & Remedies Code, and
such claims be, and are hereby, dismissed with prejudice,

and City's motion to dismiss be, and is hereby, denied, as to plaintiffs' claims pursuant to 42 U.S.C. § 1983;

(2)   All claims and causes of action asserted by plaintiffs against Carter in his official capacity be, and are hereby, dismissed without prejudice;

(3)   Legacy's motion to dismiss be, and is hereby, granted, and that all claims and causes of action against Legacy be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissals.

The court further ORDERS that by 4:00 p.m. on January 23, 2014, plaintiffs file either proof of proper service of summons and complaint on J.C.W. Defendants, or an instrument containing a satisfactory explanation, in affidavit form, as to why such proof cannot be filed.

If plaintiffs fail to comply with this order the court will consider the dismissal, without further notice, of plaintiffs' claims and causes of action against J.C.W. Defendants, as authorized by Rule 4(m) of the Federal Rules of Civil Procedure.

SIGNED January 16, 2014.

JOHN McBRYDE